# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**LEO CALVIN FAIRLEY, JR.**                                                      **PLAINTIFF**

**VERSUS**                    **CIVIL ACTION NO. 1:12-CV-143-LG-JMR**

**COMMISSIONER OF SSA**
**MICHAEL ASTRUE**                                                     **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff, Leo Calvin Fairley, Jr. ("Fairley") filed a Complaint [1] on May 3, 2012 for judicial review of Defendant, Commissioner of Social Security's ("Commissioner") Denial of Fairley's Application for disability benefits under the Social Security Act. Before the Court is Plaintiff's Memorandum [9] Brief in Support of Plaintiff's Complaint seeking to reverse the decision of the Commissioner and remand the matter to the Administrative Law Judge ("ALJ") for further consideration. The Government has filed a Memorandum [12] Brief in Opposition to the Complaint. Plaintiff has not filed a Response Brief and pursuant to the Uniform Civil Local Rules of this Court, the time has expired.

On February 27, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") [8, pp.130-33]. Plaintiff alleged he was disabled and unable to work since January 29, 2009 [8, pp.133-136]. Plaintiff's application was denied initially, upon reconsideration, and after a hearing held by

Administrative Law Judge (hereinafter referred to as "ALJ") Wallace E. Weakley on December 7, 2010 [8, pp. 13-26, 102-103]. The Appeals Council denied his request for review by letter dated March 14, 2012 [8, pp. 4-8]. Plaintiff, now, appeals the Commissioner's final decision as he has exhausted all his administrative remedies. This case is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was born in 1960, thus, he was 48 years old as of his January 29, 2009 alleged onset date [8, pp. 25,133]. He was 50 years old as of the ALJ's decision [8, pp. 22, 130]. Plaintiff completed the ninth grade [8, pp. 25,40]. He is proficient in English [8, p.25]. His past relevant work experience is as a painter and sandblaster [8, pp. 24-25, 165, 167,170].

Plaintiff testified that at the time of the hearing, he was unable to continue with his past work due to an accident and injury that occurred on the job as a shipyard worker in October 2007, which affected his back and knees [8, p.166]. Plaintiff further stated that the injury to his knees and back made it difficult to climb stairs. *Id.* Plaintiff explained that he was in the most pain when he would lean, bend, twist or stand [8,p.43]. Plaintiff received a worker's compensation settlement of $186,000 for his disability from his employer following his injury. *Id.*

The ALJ found Plaintiff had severe impairments of obesity, a herniated nucleus pulposus at the L5-S1 disc level, and mild arthritis of the knees bilaterally, but did not

meet or equal a listing [8, p.18]. The ALJ then determined Plaintiff had the residual functional capacity (RFC) to perform light work, but with no more than limited walking, an option to alternate between sitting and standing approximately every thirty minutes, no more than occasional bending, stooping, or climbing of ramps and stairs, and no kneeling [8, p.19]. Based on Plaintiff's RFC and vocational profile, the ALJ propounded hypothetical questions to a vocational expert (VE) who opined that Plaintiff could do a number of light jobs that existed in significant numbers in the national economy, such as bench assembler, mail sorter, and laundry folder [ 8, pp. 25, 67-68]. After hearing and review of the medical records, the ALJ found Plaintiff was not disabled [8, p. 26].

When the Court reviews the Commissioner's decision, it must be determined whether or not there is substantial evidence in the record to support the findings and also ensure that proper legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v.Perales*, 402 U.S. 389, 401 (1971); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) . *Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124 (6th Cir. 2003). The United States Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion", being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. at 401. On appeal, the court may not re-weigh the evidence, try the case *de novo* nor use its own judgment over that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378 (5th

Cir. 1983) ; *Jack v. Astrue,* 426 F. App'x 243, 244-245 (5th Cir. 2011), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.2005).

Plaintiff bears the ultimate burden of proving disability. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. §404.1512(a), (c) (2012). Plaintiff must provide the relevant medical and other evidence to prove his alleged disability as a result of his impairments. 20 C.F.R. §§ 404.1512(a), (c); 404.1513(e); 404.1516. The Court finds that Plaintiff failed to meet his burden, and substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

Plaintiff has two contentions to support his claims that the ALJ did not properly consider his subjective complaints of pain and other subjective complaints. Memorandum Brief in Support of Plaintiff's Complaint [9]. Plaintiff contends that: (1) his pain resulted in mental limitations which the ALJ did not include in his RFC finding, [9, pp 16-18] and (2) his pain and side effects from his pain medication restricted his ability to engage in sustained work activities [9, pp. 18-21]. The ALJ evaluated Plaintiff's complains of pain and suffering and the side of effects and determined that Plaintiff's complaints were not entirely credible [8, p.19-20].

Plaintiff retained the RFC to perform a reduced range of light work and the ALJ considered Plaintiff's subjective complaints of pain and other limitations [8, pp. 19-20,

23]. The evaluation of a claimant's subjective complaints is a task particularly within the province of the ALJ who had an opportunity to observe whether the claimant seemed to be disabled. *See Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) (quoting *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983)). Moreover, "it is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The Act and regulations first require a claimant to produce objective medical evidence of a condition that reasonably could be expected to produce the kind of pain alleged; mere allegations of disabling pain are insufficient. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(b). This initial inquiry involves whether the condition can cause the type of pain or symptoms alleged and does not entail any analysis of the severity, intensity, or persistence of the actual symptoms resulting from the medically documented condition. *See* 20 C.F.R. § 404.1529(b).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms [8,p.20]. The regulations then set forth a secondary inquiry to evaluate the severity, intensity, and persistence of the pain and symptoms a claimant actually possesses. *See* 20 C.F.R. §404.1529(c)-(d). During this evaluation, the ALJ must consider the claimant's testimony regarding his symptoms, including any inconsistencies between the testimony and the other

evidence. *See* 20 C.F.R. § 404.1529(c)(3)-(4). The ALJ reviewed Plaintiff's testimony, including his testimony that he was unable to work due to back and knee pain, that his pain interfered with is ability to sleep, and that his pain medications caused drowsiness, but ultimately the ALJ found Plaintiff's subjective complaints were not credible [8,pp. 19-20, 23]. When an ALJ finds a claimant lacks credibility, the ALJ must articulate reasons for discrediting the claimant's complaints. *Spruill v. Astrue*, 299 F. App'x 356, 358 (5th Cir. 2008) (citing *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988)). This explanation need not follow formalistic rules. *See Falco v.Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994) in determining that Plaintiff's subjective complaints were not credible, the ALJ noted that the medical evidence of record did not support the alleged severity of Plaintiff's pain [8, p.20].

Plaintiff sought treatment from Dr. John McCloskey, a neurosurgeon, for his back pains over a period of many years subsequent to his work related injury. Dr. McCloskey sent Plaintiff a letter on July 16, 2008, after reviewing his MRI of his low back, where he found that any "observable abnormalities are exceedingly minor." [8, p.252]. After examining Plaintiff in July of 2008, he believed that Plaintiff should have a one time mechanical physical therapy evaluation [8, p.254]. McCloskey placed him on a Medrol Dosepak and gave him temporary restrictions in that he should not vertically climb, crawl or lift over 20 pounds *Id.*

On July 20, 2009, Dr. McCloskey opined that based on Plaintiff's back pains,

he should not lift more than 20 lbs, and have no more than "occasional" bending, stooping, squatting and climbing of stairs [8, p.246]. Upon examination, Dr. McCloskey also found that Plaintiff should not sit or stand for greater than 2 hours without frequent breaks. *Id.*

In November of 2009, Dr. McCloskey ordered a functional capacity evaluation and an MRI of Plaintiff [8, p.232]. These tests demonstrated conclusively that Plaintiff would only be suited for "light work", in line with the restrictions considered in Dr. McCloskey's original July 2009 opinion. *Id.* In addition, Plaintiff's MRI results contained evidence that Plaintiff suffered from multi-level degenerative disk disease of the lumbar spine [8, p.229].

After an evaluation on January 2, 2010, Dr McCloskey indicated Plaintiff had pain in straight leg raising and absent ankle reflexes, but had normal knee reflexes and no weakness in hip flexion [8, pp. 21, 248]. Dr. McCloskey opined that Plaintiff had five percent partial physical impairment to the body as a whole [8, p.248]. Dr. McCloskey further found that Plaintiff had significant problems with his knee. *Id*. It was Dr McCloskey's opinion that for Social Security Disability purposes Plaintiff is totally and permanently disabled. *Id* McCloskey also believed that Plaintiff needed to undergo treatment with a pain management specialist but that no neurological intervention was needed. *Id*

On September 16, 2011, Dr. Katania Breeland evaluated the Plaintiff [8, pp.275-277]. She ordered tests and found that he should keep on his medications and limit his sodium. *Id* She found that he should return in three weeks for an additional appointment [8,p.276].

Plaintiff had x-rays on September 16, 2011 at Singing River Hospital reviewed by Dr. Roland Mestayer from an Order of Dr. Breland [8, p.278]. The film showed as to the cervical spine that "the alignment of the cervical vertebral bodies was normal and the range of motion was well maintained. *Id* There was a disc space narrowing at C4-C5 , C5- C6 and C6 - C7 but no foraminal stenosis and the edentoid was in tact. *Id* The impression from the x-ray was mild degenerative spondylosis. *Id* As to the thoracic spine series, the film showed that minimal thoracic scoliosis was present. No fractures, compression or deformities were seen. The disc spaces were well maintained and the pedicles were in tact .*Id* As to the lumbar spine, the film showed that the alignment of the lumbar vertebral bodies was normal. *Id* No spondylolysis or spondylistesis was apparent. *Id* The disc space were well maintained. The impression was that early facet arthrosis of the lower lumbar spine. *Id*

Plaintiff under went a MRI of the cervical spine on December 19, 2011 [8, p.280]. Dr. Neal Polchow found that he had multilevel degenerative disc disease of the cervical spine with no evidence of focal spinal stenosis or focal disc bulges or

protrusions displayed and possible changes in the mid cervical cord of uncertain significance. *Id* Dr. Polchow the marrow signal was normal. *Id* There was some mild reversal of the normal lordotic curvature. *Id* His thoracic spine MRI showed that the marrow signal, alignment, and intervertebral discs were normal. *Id* There was no evidence of disc bulge or protrusion or spinal stenosis [8, p.281]. The thoracic chord appeared normal. *Id* Dr. Polchow's conclusion was mild degenerative changes in thoracic spine. *Id.*

On November 5, 2009, Plaintiff had a functional capacity evaluation [8, pp.263-264]. David Dimmick M. Ed , a Exercise Physiologist opined that Plaintiff "demonstrated the ability to lift in the light physical demand level of 20 pounds from knee level to shoulder level [8, p.264]. Plaintiff had generally normal ranges of motion and muscle testing in the cervical spine, shoulder, elbow, wrist, fingers, and ankles but some reduced range of motion in the lumbar spine, hip, and knee, with reports from Plaintiff that he could sit or stand for up to about 45 minutes at a time before needing to change position [8, pp. 23, 232-39]. He asserted that the Plaintiff worked through his knee and low back pain with a gradual increase over the years. [8, p.264]. His recommendation was to return to his physician for recommendation and that case resolution may be appropriate. *Id* Dimmick also found several inconsistencies in Plaintiff's abilities during the test as to Plaintiff's push and pull testing and straight leg raising, however, and noted that such inconsistencies may

suggest Plaintiff displayed less than maximum effort in the evaluation [8, pp. 23,239,270]. No complaints of limitations in mental functioning or sleep problems due to pain were noted [8, pp. 232-33].

Plaintiff also sought treatment from Dr. Robert Zarzour, for pain in his knees. In a follow-up with primary care physician Dr. Robert Zarzour on November 13, 2009, Plaintiff complained of pain but showed no instability, and Dr. Zarzour reviewed and agreed with Mr. Dimmick's evaluation and limited Plaintiff to light work [8, p.22,231].

Dr. Zarzour's clinic notes indicate x-rays that reveal that Plaintiff suffered from mild arthritis and chondromalacia of the knees bilaterally [8, p. 261]. His plan indicates that Plaintiff should continue with his medications and have another office visit in six months with additional x-rays. *Id* There is no indication that Dr. Zarzour consulted with Dr. McCloskey but after a review of the x-rays, Dr. Zarzour opined that Plaintiff was disabled "because of his multiple physical problems" concerning both his knees and back [8, p.262]. Neither this visit nor Plaintiff's November 2009 visit reflected complaints of side effects from his medications or trouble sleeping or any mental problems due to pain.

Plaintiff visited Dr. Robert Cobb for a disability determination examination with regard to his allegations of back and knee problems [8, pp. 218-219]. Dr. Cobb's

impression was that Plaintiff has chronic lower back pain syndrome, chronic knee pain secondary to mild degenerative osteoarthritis and obesity. *Id* The ALJ noted the generally good imaging results and functional findings reflected in an April 2009 consultative physical exam with Dr. Robert Cobb [8, pp. 20-21, 216-19]. X-rays showed normal alignment and disc spacing in Plaintiff's lumbar spine and only mild osteoarthritic changes in Plaintiff's left knee, with no other bone or joint abnormalities [8, pp. 20, 216-17]. Dr. Cobb noted in his physical exam that Plaintiff had some paravertebral tenderness but no spasm and back pain with straight leg raising, but could bend laterally to thirty degrees and flex to eighty degrees and extend ten degrees, albeit with some pain [8, pp. 20, 219]. Plaintiff had no sensory changes in his lower extremities or abnormalities in his hips, could squat but used his hands to recover, had full range of motion in his knees, but complained of discomfort upon full extension of the left knee, and showed no evidence of joint instability crepitus, or effusion [8, pp. 20-21, 219].

As in Plaintiff's other medical records, no complaints of mental difficulties, sleep problems, or side effects from Plaintiff's medication were noted [8, p.218]. Dr. Cobb's report indicates that the Plaintiff is 5'6 1/2" while all other medical reports found that Plaintiff was 5'9" [8, pp.242, 245, 248, and 261]. Clearly, Plaintiff's height would have an impact on any determination with regard to his obesity.

Plaintiff testified that he lives a fairly inactive life following his back and knee injuries [8, pp.51-52]. Plaintiff stated that he spends most of his day watching television after he drops his son off at school [8, p.51]. He further explained that his wife acts as a full time housewife and takes care of all the everyday household chores. *Id.* Plaintiff testified that he has difficulty conducting everyday activities such as putting on his shoes, getting dressed or picking something up off the ground due to the fact that he suffers great pain in his knees when bending [8, pp. 53-55]. Plaintiff stated that he can sit for approximately 30 to 35 minutes before he needs to get up and move around, and that the furthest distance he can walk without stopping was between 40 and 50 yards [8, p.55]. Furthermore, he claimed that he could lift from 15 to 20 pounds with both hands, but that he would at times have trouble lifting even 10 pounds. *Id.*

Plaintiff testified that his pain also causes him to suffer from sleeping problems [8, p.61]. Plaintiff testified that due to the excessive pain, he only gets between three and five hours of sleep a night. *Id.* Therefore, Plaintiff testified that he is required to take frequent naps during the day due to a lack of sleep at night. *Id.*

The ALJ further found Plaintiff's records show he received regular medical care and regularly participated in physical therapy for his back and knee conditions prior to his January 29, 2009, alleged onset date [8, pp. 20, 202-14, 228-30, 240-45, 249-60]. However, the ALJ noted Plaintiff received infrequent treatment since his

January 29, 2009, alleged onset date and the few treatment records from this time period failed to show complaints of side effects or difficulty sleeping due to pain, or recommendations for more significant treatment beyond maintaining Plaintiff's pain medication [8, pp. 19-23, 231-39, 247-48, 261-62].

The opinion evidence from state agency reviewing physician Dr. William Hand provides additional support for the ALJ's credibility assessment and RFC finding [8, pp. 220-27]. Dr. Hand reviewed Plaintiff's medical records in May 2009 and agreed with the limitations Dr. Zarzour assessed restricting Plaintiff to a range of light work [8, pp. 221- 26, 242-45]. State agency physicians are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence of record supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(I); Social Security Ruling (SSR) 96-6p, 1996 WL 374180.

The opinion of a treating physician who is familiar with a claimant's medical condition should generally be accorded considerable weight in determining disability. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). In fact, a treating physician opinion may even be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, the ALJ is free to assign little or no weight to the opinion of any physician, even a treating source, for good cause *Id.* Good cause arises where statements are

brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Perez*, 415 F.3d at 466; *Newton*, 209 F.3d at 456. Consequently, treating physicians' opinions are not only not conclusive in disability claims, *Perez*, 415 F.3d at 466, but may be rejected when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling pain and side effects were not entirely credible. The Court further finds evidence of record showed minimal, conservative treatment with medication, no reports to any treating or examining physicians of any side effects from medication or trouble sleeping or mental problems due to pain, and assessments that Plaintiff could do a range of light work [8, p.20-23]. Thus, the Court finally finds evidence of record fails to support greater limitations than what the ALJ already included in his RFC finding limiting Plaintiff to a range of light work [8, pp. 19-23] and the ALJ's decision as to the credibility of a claimant's limitations is entitled to considerable deference where, as here, it is supported by substantial evidence. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

After finding that Plaintiff's RFC for a range of light work precluded him from performing any past relevant work, the ALJ assessed whether Plaintiff could perform

other work that exists in the national economy [8, pp. 24-25]. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Using the Medical-Vocational Guidelines as a framework, given the existence of non-exertional limitations, the ALJ relied on the VE's response to a hypothetical that accurately described Plaintiff's RFC and vocational profile [8, pp.25-26, 67-68]; *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). Specifically, the VE testified that Plaintiff can perform light jobs, such as bench assembler, mail sorter, and laundry folder, that exist in significant numbers nationally [8, p. 67]. *See* 20 C.F.R. § 404.1560(c)(1) ; 20 C.F.R. § 404.1566(e) .

Plaintiff alleges that the ALJ erred in relying on VE testimony because he did not comply with SSR 00-4p, which requires an ALJ to inquire about whether the VE testimony is consistent with the DOT and to resolve any "apparent unresolved inconsistency" between the VE's testimony and the Dictionary of Occupational Titles (DOT), SSR 00-4p, 2000 WL 1765299 [ 9].

The ALJ asked the VE whether her testimony complied with the DOT, and the VE testified that it did to the best of her knowledge, thus indicating no apparent unresolved inconsistency existed [8, p.68]. Plaintiff, who is represented by counsel, fails to cite any legal authority that requires an ALJ to go beyond this inquiry to independently investigate the veracity of VE testimony regarding the consistency of the VE's statements with the DOT. *Cf. Carey v. Apfel*, 230 F.3d 131, 146- 47 (5th Cir. 2000). Plaintiff was also represented at the hearing, and counsel did not identify any

"apparent unresolved conflict" when given the opportunity to question the VE [8, pp. 68-69].

Moreover, Plaintiff's contention is that a "direct" conflict existed rests solely upon Plaintiff's interpretation of the ALJ's RFC finding [9]. Plaintiff alleges the ALJ's inclusion of "an option to alternate between sitting and standing approximately every thirty minutes" in his RFC finding amounts to a limitation to standing no more than four hours total in an eight-hour workday. The Government asserts the ALJ's RFC finding and hypothetical posed to the VE, however, does not identify any such limitation on the number of hours Plaintiff can stand in *total* within an eight-hour workday. The Government contends that to the contrary, the ALJ explicitly clarified in his hypothetical to the VE that while Plaintiff would need the option to alternate his position every thirty to thirty-five minutes, Plaintiff could still sit and stand for eight hours total [8, p. 67].

Accordingly, the Court finds that the VE testimony at the hearing was not based on any underlying inconsistent definition of light work. The VE's testimony identifying light duty jobs which Plaintiff could perform was based on the limitations the ALJ assessed which were sitting or standing for eight hours total with the option to take a break from maintaining that same position every thirty to thirty five minutes. The Court further finds that this determination is consistent with the regulations, agency rulings, and DOT definitions classifying jobs as light work generally when

they require a "good deal" of standing or walking or sitting most of the time while pushing and pulling arm or leg controls. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251; *see also* DOT, Appendix C, 1991 WL 688702. The Court finally finds that no inquiry was necessary because no direct conflict existed. *See* SSR 00-4p. The ALJ must obtain an explanation for a conflict only when "there is an apparent unresolved conflict" between the VE's testimony and the DOT); *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000). Thus, the Court finds that the cases cited by Plaintiff were cases involving a direct conflict, thus, are distinguishable from the pending matter, and the ALJ did comply with SSR 00-4p.

In conclusion, the Court finds that the ALJ used the proper legal standards and that his opinion is supported by substantial evidence. Based on the foregoing, the Court recommends that the Plaintiff's appeal be dismissed with prejudice; and, that Final Judgement in favor of the Commissioner be entered.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A

party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SO ORDERED**, this the 16th day of July, 2013.

/s/ *John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE